UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO BERRERA, | No. 2:15-cv-0610-KJM-EFB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| J. SIVYER, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. Defendant Macomber seeks dismissal of the claims against him, arguing that plaintiff failed to exhaust them administratively and that the allegations do not state a viable claim for relief. Macomber also argues that he is entitled to qualified immunity.[1] For the reasons that follow, it is recommended that the motion be denied.

**I.    Background**

Plaintiff filed this case on March 18, 2015, alleging that defendant Sivyer shot him with "his 40mm firearm"[2] in the eye, during a yard skirmish in which plaintiff was not involved.

---

[1] In its screening order, the court found that plaintiff stated potentially cognizable claims against defendants Macomber and Sivyer. ECF No. 8. Defendant Sivyer is not a party to the instant motion to dismiss.

[2] Attachments to the complaint reveal that Officer Sivyer fired three "40 mm foam baton rounds from his 40 mm launcher." ECF No. 1 at 34.

1

Plaintiff claims that Sivyer stated that this was "payback for your homies assaulting my partner." ECF No. 1 at 6. According to plaintiff, Sivyer also told plaintiff that "we got permission from the Warden [Macomber] to shoot yall asses." *Id.* Plaintiff alleges that Sivyer and other officers engaged in a pattern and practice of shooting inmates in the face and head and that Macomber was aware of and sanctioned that practice. *Id.* at 8-9.

In the section of the form complaint plaintiff filled out entitled "Exhaustion of Administrative Remedies," plaintiff placed an "X" indicating a "Yes" response to these questions: (1) whether there was a grievance procedure available at his institution, (2) whether he had filed a grievance concerning the facts relating to the complaint, and (3) whether the grievance process was completed. *Id.* at 2. Plaintiff referred to his administrative appeal in the body of his complaint as well, stating, "So when Plaintiff did as they requested, they cancelled Plaintiff's 602 appeal and lied and said it was a duplicate and they the institution [sic] would not allow Plaintiff to submit his appeal (See CDC Form 695 as exhibit 'B'). This has been done to Plaintiff on May 5, 2014 and on July 25, 2013. So Plaintiff has exhausted his institutional appeal." *Id.* at 4. Plaintiff additionally appended 40 pages of documents related to his administrative appeals. *Id.* at 23-64. These pages concern the following appeals:

    (1) <u>Log No. SAC-B-14-00223, filed on January 20, 2014</u>. This appeal was the earliest
        filed by plaintiff concerning the shooting. Plaintiff stated the grievance as:

> On 1-15-2014, CDCR personnel/prison officials at California State Prison-Sacramento shot me in the face and eye causing me severe pain, wanton pain and suffering, and loss of vision in left eye.
>
> Here CDCR Personnels—Negligence [sic]: Maliciously and sadistically misused firearm with deadly force/use of force to cause harm . . . and failure to intervene, inadequate policy, supervision, training, control by supervisors—supervisor(s) liability/were deliberately indifferent in violation of my 8th amendment United States Constitution.
>
> (Guards: J. Sivyer & J. Thorell)

        ECF No. 1 at 25, 27. The documents attached to the complaint reveal that this
        grievance was screened out at the first level twice: first, on January 28, 2014 for
        failure to provide supporting documentation, making a general allegation but not

2

stating facts consistent with the allegation, and failing to identify the staff members involved; second, on February 28, 2014 for failing to attach a CDC 1858 Rights and Responsibilities Statement and failing to identify the staff involved. *Id.* at 33, 36. When it was finally reviewed on the merits at the first level, the reviewer determined on June 17, 2014 that staff had not violated CDCR policy. *Id.* at 41.

At the second level of review, the appeal was again cancelled, this time because plaintiff had not signed and dated it. *Id.* at 38. When it was reviewed on the merits, the reviewer again determined (on October 22, 2014) that staff had not violated CDCR policy. *Id.* at 23, 39.

On February 17, 2015, over one year after it was filed, officials rejected plaintiff's appeal at the third level of review, again concluding that staff had not violated CDCR policy. *Id.* at 23-24.

(2) Log No. SAC-B-14-00527. The attachments contain only one reference to this appeal, in the cancellation notice for Log No. SAC-B-14-01141. The latter appeal was canceled as duplicative of Log No. SAC-B-14-00527 (see below). ECF No. 1 at 53.

(3) Log No. SAC-B-14-00625, filed on February 28, 2014. In this appeal, plaintiff alleged that Officer Sivyer had shot him in the left eye for no reason on January 15, 2014 and that "[i]t has been officer practice to shoot prisoners in the face and head at folsom [sic] under the warden supervision. So he is also responsible for not training his officers correctly." ECF No. 1 at 59, 61. The appeal was cancelled on March 6, 2014 at the first level as duplicative of Log No. SAC-B-14-00527. *Id.* at 52.

(4) Log No. SAC-B-14-01141, filed on April, 27, 2014. In this appeal, plaintiff explained his issue as: "I sent you my 602 complaint about being shot in the face, and I never received it back. You said you sent it to me but I never received it. Send me a copy of it please!" ECF No. 1 at 63. This appeal was cancelled as duplicative of Log Nos. SAC-B-14-00527 and SAC-B-14-00223. *Id.* at 53.

(5) Log No. SAC-B-14-02022, filed on July 14, 2014. In this appeal, plaintiff stated his claim substantively the same as in Log No. SAC-B-14-00625. ECF No. 1 at 57. The

| | |
|---|---|
| 1 | appeal was cancelled at the first level as duplicative of Log No. SAC-B-14-00223. *Id.* |
| 2 | at 54. |

**II.     The Motion to Dismiss**

    **A.     Exhaustion**

          **1.     <u>Governing Law</u>**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (the purpose of the exhaustion requirement is to give officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation (CDCR Form 602), which instructs the inmate to describe the problem and outline the action requested. Title 15 of the California Code of Regulations, § 3084.2 provides further instructions, which include the direction to "list all staff member(s) involved" and "describe their involvement." Cal. Code Regs. tit. 15, § 3084.2(a)(3). If the prisoner does not know the staff member's name, first initial, title or position, he must provide "any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." *Id.*

The grievance process, as defined by the regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code Regs. tit. 15, § 3084.7.

/////

4

Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id*. § 3084.1(b).

An appeal may be canceled for untimeliness at any stage of the review process. *Id.* § 3084.6(a)(5), (c)(4). Once an appeal has been canceled, the inmate may not resubmit it unless the appeals coordinator or third level appeals chief determines that the cancellation was in error or "new information is received which makes the appeal eligible for further review." *Id.* § 3084.6(a)(3). The inmate may grieve the cancellation separately, however. *Id.* § 3084.6(e). If the grievance of the cancellation is granted, the inmate may resubmit the appeal. *Id.* § 3084.6(a)(3).

According to state regulations, "a cancellation or rejection decision does not exhaust administrative remedies." *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief . . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 216 (2007). To bear this burden:

> [A] defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted). Once a defendant shows that the plaintiff did not

5

exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).

A defendant may move for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) in the extremely rare event that the plaintiff's failure to exhaust administrative remedies is clear on the face of the complaint. *Id.* at 1166. "Otherwise, defendants must produce evidence proving failure to exhaust" in a summary judgment motion brought under Rule 56. *Id.* If the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120, overruled on other grounds by *Albino*, 747 F.3d 1162.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings. Exhibits attached to the complaint, and matters properly subject to judicial notice may also be considered. The court also construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Otherwise, matters extrinsic to the complaint may not be considered without converting the motion in to a motion for summary judgment pursuant to Rule 56. Fed. R. Civ. P. 12(d).

Here, the court must determine whether the information in plaintiff's complaint concerning exhaustion of his administrative remedies establishes a failure to exhaust his claim against defendant Macomber. To dismiss on that ground, the court must conclude that plaintiff's complaint shows not only that he failed to exhaust his administrative remedies but also that those remedies were effectively available at the time. *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010) (holding that a prisoner may be excused from the exhaustion requirement where the conduct of prison officials rendered the administrative remedy effectively unavailable). Thus, in *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225-26 (10th Cir. 2007), the Tenth Circuit noted that "courts are obligated to ensure that any defects in exhaustion were not procured from the

6

action or inaction of prison officials."  Because the conduct of prison staff in processing a grievance is often an issue in determining whether the administrative system was actually available to the plaintiff and because such facts are not ordinarily pleaded in a complaint concerning other prison conditions, it is extraordinarily rare for a court to be able to determine the exhaustion question by looking only at the face of the complaint, as it must on a Rule 12(b)(6) motion.  *Id.* at 1225 ("[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.").

### 2.  Analysis

Defendant argues that plaintiff has admitted that a grievance system was "available" at his institution by checking "yes" on the form complaint when asked, "Is there a grievance procedure available at your institution?"  ECF No. 1 at 2.  But checking the yes box in answer to this question hardly admits that the grievance system was effectively "available" in the sense that not only did the institution have a grievance system but that plaintiff's specific attempts to use it to address the issues raised in his complaint were not thwarted by prison staff.  A grievance system may be generally "available" as that word is ordinarily understood ("present or ready for immediate use," https://www.merriam-webster.com/dictionary/available) and yet not effectively "available" as that word has been defined in jurisprudence concerning exhaustion under the PLRA.  *See Sapp*, 623 F.3d at 822-23 (holding that the conduct of prison officials may render an existing administrative remedy effectively unavailable).

In fact, the documents appended to the complaint raise questions as to whether the administrative remedy in this case was rendered effectively unavailable by the conduct of prison staff.  Plaintiff's first grievance, Log No. SAC-B-14-00223, was screened out twice at the first level of review, first for failing to provide supporting documents, making a general allegation without supporting facts, and failing to identify staff involved, and second for failing to attach a rights and responsibilities statement.  From the documents appended to the complaint, the court cannot determine whether these screenings were justified.  For example, the grievance appended to the complaint lists correctional officers J. Sivyer and J. Thorell in the "Explain your issue"

section, and it is unclear whether the original form submitted by plaintiff contained those names or whether plaintiff added them later in the appeals process. If they were there from the beginning, screening the appeal out for failing to name the involved staff appears to have been unnecessary and unwarranted. Plaintiff's documents also contain a handwritten note by plaintiff stating that staff had refused to provide him with the rights and responsibilities statement that his appeal was "screened out" (i.e. rejected) for not including a copy. ECF No. 1 at 36.

When Log No. SAC-B-14-00223 finally made it through the first level of review (a process that took five months), it was again screened out at the second level because plaintiff had failed to sign and date it. It took four months for this level to complete review of the appeal, and another four months for the third level to complete its review. The extended review period and the multiple screenings raise questions about the availability of an effective grievance process in this case and resolution of that question will require consideration of evidence beyond the complaint to resolve. *See Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir. 2005) ("Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available."). The complaint and its attachments standing alone do not make clear that plaintiff's administrative remedy was effectively "available." For these reasons, Macomber's motion to dismiss on this ground must be denied.

Macomber next argues that plaintiff did not properly exhaust the claim against him because he failed to name Macomber in his initial grievance (Log No. SAC-B-14-00223). According to Macomber, the court should not consider plaintiff's other grievances (which did name the warden) because they were properly screened out as duplicative. But plaintiff alleges in his complaint that these other grievances were improperly screened, placing in issue the propriety of the screenings. ECF No. 1 at 4. In any event, refusal to process the subsequent grievances as duplicative ties their fate to that of the screening of the original grievance.[3] Macomber, for the reasons stated above, has not met his burden of showing that grievance process was actually available to plaintiff in his initial grievance (Log No. SAC-B-14-00223). If

---

[3] Further, where the subsequent grievances may have cured the technical deficiencies as to the first grievance, they were not duplicative.

8

that grievance was made effectively unavailable through the conduct of prison staff, it was also improper to refuse to consider plaintiff's subsequent attempts to grieve the issue.

For these reasons, defendant has not sustained his burden of showing on this motion that the grievance was both (1) available and (2) not properly exhausted. Accordingly, the court need not consider at this stage whether plaintiff included sufficient information in his intial grievance to properly exhaust under applicable state regulations. Because it is not clear from the complaint that the grievance system was available to plaintiff, Macomber's motion to dismiss the complaint for failure to exhaust must be denied without prejudice to the court's consideration of the issue on a properly noticed and supported motion for summary judgment or at trial.

### B. Failure to State a Claim

Macomber next points to a reference in plaintiff's complaint to a declaration filed by an inmate in another case, *Hunt v. Turner* (E.D. Cal. Case No. 2:14-cv-01286 MCE CKD P), and argues that the court may consider documents filed by that other action, which are outside the complaint herein, in ruling on this motion to dismiss. According to Macomber, plaintiff's reference has necessarily incorporated the *Hunt* complaint and, therefore, it and various other filings in that action are subject to judicial notice. Macomber further argues that the *Hunt* complaint and various filings in that action show no evidence of the policy plaintiff alleges here (i.e., that correctional officers are allowed to shoot inmates in the head). Thus, argues Macomber, because the *Hunt* documents negate plaintiff's claim that Sivyer intended to shoot him in the head, plaintiff's complaint herein fails to state a claim against Macomber. The argument falls under its own weight.

Under the "incorporation by reference" doctrine, a court may consider, in ruling on a Rule 12(b)(6) motion, documents whose contents are alleged in a complaint and whose authenticity no party questions but which were not physically attached to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Plaintiff has not incorporated by reference the *Hunt* complaint (or any of the other *Hunt* documents Macomber asks the court to consider. Plaintiff has not alleged the contents of the *Hunt* complaint, he merely refers to "inmate Tyrone Hunt's declaration for his lawsuit that's in your court as of right now. Case # 2:14-cv-01286 CKD." Hunt's

9

declaration is the only document plaintiff has referred to from the *Hunt* action. He has not incorporated by reference the Hunt complaint or any other document attached to it.

Even if the court were to judicially notice the other documents proffered by Macomber from *Hunt* (which consist of (1) findings and recommendations recommending summary judgment in favor of the defendant and (2) a policy submitted by the defendant in support of her motion for summary judgment), they are not dispositive of disputed facts asserted in plaintiff's complaint. Plaintiff has alleged that Macomber continued a policy and/or practice as warden that allowed correctional officers to shoot foam baton rounds at inmates' heads. The determinations made by the court on summary judgment in *Hunt* are based on the court's review of *all* the evidence submitted in that case and the specific allegations made by the plaintiff therein (which did not include such a claim against the warden). It remains to be seen what evidence will be presented by the parties in this action, and it is improper for the court to consider on this motion to dismiss evidence cherry-picked from the *Hunt* action simply because plaintiff referred to the Hunt declaration. Neither is the ruling in *Hunt* preclusive as to the plaintiff in this action.

Nor do the incident reports attached to complaint, which contain Sivyer's version of events, "negate" plaintiff's allegations, as defendant claims. *See* ECF No. 1 at 132-33. These documents are simply evidence of what Sivyer reported after the event and must be weighed with all the other evidence at the appropriate stage of the proceedings to determine whether plaintiff will be able to establish defendants' liability.

Defendant Macomber asks the court to consider additional evidence not alleged by plaintiff to determine whether to dismiss plaintiff's claim against him. This the court may not do. Because defendant's argument depends on the consideration of evidence outside the complaint and the determination of disputed facts, Macomber's motion to dismiss for failure to state a claim must be denied.

**C. Qualified Immunity**

Lastly, defendant Macomber argues that he should be afforded qualified immunity. A court undertakes a two-part analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first prong of the test asks whether the

facts "[t]aken in the light most favorable to the party asserting the injury" shows that the defendant violated a constitutional right. *Id*. The second prong asks whether "the [violated] right was clearly established" at the time of the alleged violation. *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202.

Defendant argues that plaintiff has alleged no facts that show that he violated plaintiff's constitutional rights because plaintiff has not alleged facts that would justify liability against him as Sivyer's supervisor. There is no respondeat superior liability under § 1983. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2013). That is, a plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1948 (2009). Because respondeat superior liability is inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. To be held liable, "the supervisor need not be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Starr v. Baca*, 633 F.3d 1191, 1194-95 (9th Cir. 2011) (quotations omitted). Nonetheless, a plaintiff must establish a causal connection between the supervisor's conduct and the plaintiff's claimed injury. *Id*. at 1196.

According to defendant, plaintiff "alleges only that Macomber was the Warden of CSP-Sacramento on the day that Officer Sivyer used force, and his own allegations and matters of judicial notice negate that there was an undefined policy, pattern or practice at CSP-Sacramento, instituted by the Warden, to shoot inmates in the head." ECF No. 34 at 9. But, as discussed in the preceding section, the allegations of the complaint – that defendant continued a policy, pattern or practice allowing correctional officers to shoot inmates in the head – are not negated by any other document that the court may properly consider in ruling on this motion to dismiss. These allegations suffice to allege a causal connection between Macomber's conduct and plaintiff's injury. Accordingly, Macomber has not shown that the complaint should be dismissed at this stage based on qualified immunity.

/////

### III. Conclusion and Recommendation

For the foregoing reasons, it is hereby RECOMMENDED that defendants' November 16, 2016 motion to dismiss (ECF No. 34) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 31, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE